

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**MATIN AQUIL HASSAN,**

      Plaintiff,

v.                                       Civil Action No. **3:12CV876**

**JOHN NEWHART,** *et al.*,

      Defendants.

### MEMORANDUM OPINION

Matin Aquil Hassan, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  Hassan contends that Defendants Sheriff John Newhart and Lieutenant Vernon L. White ("Defendants") violated his First[2] and Fourteenth[3] Amendment rights during his incarceration in the Chesapeake City Jail.  Defendants have filed a Motion to Dismiss for Insufficient Service of Process (ECF No. 22) and, in the alternative, a Motion to Dismiss for Failure to State a Claim (ECF No. 23).  For the reasons stated below, the Court will GRANT the Motion to Dismiss for Failure to State a Claim (ECF No. 23) and will DENY AS MOOT the Motion to Dismiss for Insufficient Service of Process (ECF No. 22).

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[3] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## I.    Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).  In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.*

2

*DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.     Summary of Allegations

The allegations in Hassan's Complaint are as follows:[4]

> I being a believing Muslim for the past 24 years was denied my First and Fourteenth Amendment rights at the Chesapeake City Jail in Chesapeake, VA. My rights were violated due to the fact the Sheriff of Chesapeake City Jail, Mr. John Newhart, and his subordinate, Lt. Vernon L. White, did not provide me access nor adequate means to attend the Friday (Jumah) service that believing Muslims are commanded by GOD to attend on Fridays.
>
> It is and was an emotional, stressful time period for me being that for the past 24 years I attended Friday service every Friday. During my incarceration at the jail from Aug. 15 – Sep. 21, 2012, I was under duress emotionally, and spiritually. Their excuse was I could have a sponsor come in to have to service, but that would not have done any good because the service has to be held in a congregational setting, and in Islam, a congregation consists of 3 people or more, one person to give the sermon and the other two to sit as the congregation. I was the only believing Muslim in the 4B block I was in, nobody else was making the five obligatory prayers daily as I am and was. . . . Due to the fact that the Friday service was not adequately provided for me by the Sheriff of Chesapeake City Jail and Lt. Vernon L. White, I was emotionally distressed . . . . That experience is having long term effects on me . . . .

(Compl. 4–5.)

---

[4] The Court corrects the capitalization and punctuation in quotations from Hassan's Complaint. The Court employs the pagination assigned by the CM/ECF docketing system to the Complaint.

Hassan demands $1,000,000.00 and injunctive relief in the form of "having the Friday service implemented." (*Id.* at 6.) As explained below, Hassan fails to state a claim against the Defendants.

### III.   Analysis

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions).

Hassan fails to state a claim against Defendants. Hassan fails to allege any facts suggesting that either Defendant Newhart or Defendant White had any direct involvement or personal responsibility in the deprivation of his constitutional rights. For that reason alone, Hassan's Complaint should be dismissed.

Here, the alleged constitutional violations took place in the Chesapeake City Jail. Hassan, however, is no longer incarcerated there. (*See* ECF No. 10, at 2.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Hassan fails to allege that his claim for injunctive relief against Defendants remains viable. Accordingly, Hassan's request for injunctive relief will be DISMISSED AS MOOT.

Moreover, even if Hassan had adequately alleged that Defendants were personally involved with the deprivation of his rights, his claim must be dismissed. While Hassan fails to specify which portion of the First or Fourteenth Amendment are at issue, he appears to bring a claim under the Free Exercise Clause of the First Amendment as applied to the states under the Fourteenth Amendment.[5] To state a Free Exercise claim, Hassan must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature" and (2) that Defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r of IRS*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (some internal quotation marks omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). Second, Hassan must allege that the restriction fails to further a legitimate penological interest.

Assuming without deciding that Hassan's religious beliefs are sincere and that Jumah service is an important religious component for Hassan, Hassan doubtfully alleges that Defendants imposed a substantial burden on his ability to practice his religion. It is doubtful that Defendants' actions put "substantial pressure" on him to "modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187 (internal quotation marks omitted) (citation omitted). Hassan suggests that on six Fridays during his incarceration in the Chesapeake City Jail from

---

[5] Hassan cites the Fourteenth Amendment but he raises no equal protection claim. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). Hassan neither states that he and a comparator inmate were treated differently nor that the differential treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

August 15, 2012 through September 21, 2012, Defendants failed to provide him with "access

[ ]or adequate means to attend Friday (Jumah) prayer service." (Compl. 4.)   Hassan admits that

Defendants offered an accommodation to him in the form of a sponsor to come to the jail to

conduct the Jumah service.  (*Id.*)   However, even with a jail-provided sponsor, Hassan contends

that he could not conduct Jumah in his own cell block because Jumah must take place in a

congregation of at least three worshippers, and no one else in his cell block practiced Islam. (*Id.*)

Hassan states his inability to attend a Jumah service made him "emotionally distressed," (*id.* at 5)

but he fails to allege that he felt a substantial pressure to abandon or change his religious beliefs.

     Even if Hassan alleges a substantial burden on his religion, Defendants' actions pass

constitutional muster because the actions were reasonably related to legitimate penological

interests.  *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987).  In assessing whether a regulation or

managerial decision is reasonable, courts consider (1) whether a "valid, rational connection

[exists] between the prison regulation [or managerial decision] and the legitimate governmental

interest put forward to justify it," (2) whether "alternative means of exercising the right [exist]

that remain open to prison inmates," (3) what "impact accommodation of the asserted

constitutional right will have on guards and other inmates, and on the allocation of prison

resources generally," and (4) whether an "absence of ready alternatives" to the regulation or

managerial decision in question exists.  *Id.* at 89–90 (citations omitted) (internal quotation marks

omitted); *see O'Lone v. Shabazz*, 482 U.S. 342, 350–52 (1987).  Significantly, in conducting this

inquiry, "[t]he burden, moreover, is not on the State to prove the validity of prison regulations

[or managerial decisions] but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126,

132 (2003) (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone*, 482 U.S. at 350; *Jones v.

N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).  Here, the Court faces difficulty

in assessing the reasonableness of the jail's actions under *Turner* because Hassan failed to meet his burden to allege relevant facts.

First, Hassan fails to allege that his inability to participate in Jumah service was a result of Defendants' policy or actions. Defendants offered to provide him with a sponsor to conduct a Jumah service however, he rejected their offer. Instead, Hassan admits that the lack of practicing Muslims in his block was the cause of his inability to participate in Jumah prayer service as he desired. Hassan also fails to allege what action he desired of the Defendants after he rejected their offer to provide him with a sponsor. Nevertheless, assuming that the Defendants' refused to locate and gather practicing Muslims to create a "congregation" sufficient for Jumah service, such an action would be rationally related to the legitimate government interest of security and maximizing limited prison resources. *Cf. Smith v. Kyler*, 295 F. App'x 479, 481–82 (3d Cir. 2008) (citations omitted) (holding that policy of providing chaplains for "only the largest major faith groups and to prohibit worship in the absence of an approved, volunteer Faith Group Leader" is "rationally connected" to the "legitimate interest" of "maintaining prison security" and "managing limited financial resources").

Moreover, Hassan fails to identify, as he must, any "ready alternatives" to accommodate his desire to attend Jumah services. *O'Lone*, 482 U.S. at 350 ("[P]lacing the burden on prison officials to disprove the availability of alternatives . . . fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators.") By failing to identify alternatives, the Court has difficulty assessing the impact that accommodating Hassan would have on the jail. Nevertheless, the jail offered to provide Hassan with a sponsor to conduct services, but Hassan alleges that no other practicing Muslims were available to form a congregation. Thus, locating and gathering other Muslim inmates, when Hassan alleges none exist, would be burdensome for the jail. *See Smith*, 295 F. App'x at 482 ("[P]roviding group

7

religious services . . . impose[s] a substantial burden on prison staff and resources."); *Adkins v. Kaspar*, 393 F.3d 559, 565 (5th Cir. 2004) (citations omitted) ("Requiring the defendants to accommodate every . . . requirement" of a religion "could 'spawn a cottage industry of litigation and could have a negative impact on prison staff, inmates and prison resources.'")

Furthermore, Hassan has alternative means to practice Islam. Hassan makes no allegation that he was prohibited from engaging in other tenets of his religion such as worship, prayer, fasting, or study during his five weeks of incarceration in the Chesapeake City Jail. *See O'Lone*, 482 U.S. at 352 (finding no First Amendment violation when inmates who could not attend Jumah could participate in "other religious observances of their faith"); *Smith*, 295 F. App'x at 482 (holding that despite inability to participate in congregational prayer inmate had alternative means to practice religion). Hassan admits that he had the ability to engage in other methods of worship, including his five obligatory daily prayers. (Compl. 4.) Thus, Hassan has sufficient alternative means to practice his religion.

Based on the facts as alleged by Hassan, Defendants' refusal to provide Hassan with Jumah service as he desired was rationally related to legitimate penological interests. Thus, Hassan's claim will be DISMISSED.

### III.    Conclusion

Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 23) will be GRANTED. Defendants' Motion to Dismiss for Insufficient Service of Process (ECF No. 22) will be DENIED AS MOOT. Hassan's claim and the action will be DISMISSED. The

Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C.

§ 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

/s/

James R. Spencer
Senior U. S. District Judge

Date: 1-9-15
Richmond, Virginia